October 14, 2016

Hon. Yvonne Gonzalez Rogers
U.S.D.C., Northern District of California
1301 Clay Street, Courtroom 1 - 4th Floor
Oakland, CA 94612

Re:   *Continental Advisors S.A, et al. v. GSV Asset Management, LLC et al.*,
       Case No. 4:14-cv-05609-YGR

Dear Judge Gonzalez Rogers:

Third party Twitter Inc. and Plaintiffs submit this letter brief regarding Plaintiffs' document subpoena to Twitter and deposition subpoena to former Twitter employee Nils Erdmann.

***Twitter's Opposition to Plaintiffs' Subpoenas***

In October 2013, the same Plaintiffs in this case (Precedo Capital and Continental Advisors) sued Twitter.  *Precedo Capital Group Inc., et al v. Twitter Inc.*, 33 F. Supp.3d 245, 251 (S.D.N.Y. 2014). That claim involved allegations near-identical to the ones asserted here:  GSV, the Defendant in this case, misrepresented to Plaintiffs that GSV had exclusive rights to sell Twitter stock—and Plaintiffs claimed with no evidence or specific allegation that Twitter was somehow in on it (claiming over $24 million in damages).  *Id.* at 248–50.  But Plaintiffs never got past the pleading stage in that case.  The reason?  *Plaintiffs could not put forth a good faith allegation (nor any evidence) that Twitter was involved in any of the alleged conduct*.  *Id.* at 253–58.  Judge Shira Scheindlin, explained—after a careful review of both the allegations of the complaint and numerous submitted documents—that all of Plaintiffs' allegations of wrongful conduct concerned *GSV*, not Twitter, and they could allege nothing to make Twitter liable for GSV's conduct (and dismissed with prejudice).  *Id.* at 251, 253–58.  This was true even though Plaintiffs had evidence that Twitter (including Mr. Erdmann) had conversations with GSV concerning the sale of Twitter shares.  *Id.* at 251, 258.  In short, Plaintiffs sued the wrong party, and they had no basis to force Twitter into expensive, time-consuming discovery.

Fast forward two years, and Twitter receives a production demand that is as wide-ranging, overbroad, and invasive as one would expect if Twitter were actually a party.  These demands and Twitter's responses are attached here as Exhibit A.  (Incredibly, these requests are ones that Plaintiffs *narrowed* in response to Twitter asking to meet and confer—i.e., their original requests were even broader.)  The subpoenas are improper for many reasons.

*First*, the law is unequivocal: if the party issuing a subpoena to a third party can obtain the requested information from an actual party in suit, the subpoena is improper.  *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005) ("Moreover, these request all pertain to defendant, who is a party and, thus, plaintiffs can more easily and inexpensively obtain the documents from defendant, rather than from nonparty KSA."); *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) ("the district court could properly require [the plaintiff] to seek discovery from its party opponent before burdening the nonparty"); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (quashing subpoena seeking information that could be obtained from the party opponent "in the absence of a convincing showing that the subpoena is likely to yield unique and material evidence from the third party" and explaining, "*[t]here is simply no reason to burden nonparties when the documents sought are in possession of the party defendant*").  Here nearly all of the requests seek information in GSV's possession.  *See, e.g.*, Ex. A at Requests 1, 7, 8, 9, 12, 15, 18, 22, 23, 27, 28, 29, 33, 37, 41, 46.  Twitter

Hon. Yvonne Gonzalez Rogers
October 14, 2016
Page 2

has asked time and again whether Plaintiffs were unable to obtain any of these documents from GSV, and Plaintiffs have responded only that they have no obligation to do so. At bottom, this aggressive tactic, in and of itself, has stymied any meaningful compromise.

*Second*, the broad discovery Plaintiffs seek is not proportional to the needs of the case—and as a third party, Twitter is entitled to a measure of restraint. *In re NCCAA Student-Athlete Name & Likeness Licensing Litig.*, No. C 09-1967 CW, 2013 WL 1285588, at *3–4 (N.D. Cal. Mar. 28, 2013) (imposing sanctions on the subpoenaing party for failing to tailor third party requests narrowly). *This* case is about whether GSV defrauded Plaintiffs. Importantly, there is no dispute that there have never been any communications between Plaintiffs and Twitter. And a previous Court has already held that Plaintiffs have no allegations (much less proof) that support the idea that Twitter was in on any alleged scheme to defraud. To the extent Plaintiffs seek discovery into the relationship between GSV and Twitter—including any agreements between the two—that is in GSV's possession and not properly discoverable from third party Twitter (as explained above). Any discovery beyond that—such as internal Twitter discussions, and Twitter discussions with third parties, is far afield from the issues in this case. *See, e.g.*, Ex. A at Request 36 (demanding production of *all internal* Twitter communications concerning a *nonparty* to the litigation); Request 38 (demanding *any* engagement with *anyone* concerning an offering of *any* Twitter stock at *any point* in 2012).

*Third*, in dealing with a third party, Plaintiffs' counsel's pattern of delay and refusal to follow this Court's rules is reason alone to quash the subpoena. As is evident from the timing of this filing, Plaintiffs sought this discovery at the eleventh hour. On June 20, Twitter provided a detailed set of objections and responses to Plaintiffs' subpoena—explaining that nearly all of the requests were properly obtained from GSV and were far too invasive and expansive in scope. For nearly *three months*, Plaintiffs ignored Twitter's objections and responses entirely. This is no exaggeration; Plaintiffs did not have a single correspondence or communication with Twitter after we served our objections—and they certainly did not move the Court. Indeed, we thought they had dropped the matter entirely.

Just a month before discovery close, on September 13, Plaintiffs (seemingly out of the blue) demanded production on all requests—ignoring entirely the substance of Twitter's objections—and demanded and in person meet and confer *the very next day*. Twitter responded immediately, the same day, explaining the timing did not work, and asked for a substantive response to its detailed objections. Plaintiffs went radio silent *for three weeks* (again, leading Twitter to believe they had dropped the issue), until there was just *one week* left within the discovery period. Plaintiffs also refused to meet and confer in person at that point, claiming it would be "futile," until Twitter cited Your Honor's standing orders. Because of this, only on the second to last day of discovery were the parties able to meet and confer in person, per Your Honor's orders. In light of this conduct, and Plaintiffs' failure to move on Twitter's objections for months, it does not stand to reason that Twitter has somehow waived objections (as Plaintiffs assert below). To the contrary, it is Plaintiffs that have done so.

Furthermore, in keeping with Plaintiffs' pattern of delay, Plaintiffs did not subpoena Mr. Erdmann timely. When Plaintiffs resurfaced after three months of silence, with just a month left for discovery close, they demanded a deposition of Mr. Nils Erdmann within two weeks—a third party who no longer works at Twitter. Twitter explained *immediately* that this could not work in terms of timing, and Plaintiffs had not justified a deposition regardless, so Twitter could not accept service. *Four days before the close of discovery*, Plaintiffs asked for Mr. Erdmann's contact information *for the first time*. Indeed, it appears that they have yet to serve him.

Hon. Yvonne Gonzalez Rogers
October 14, 2016
Page 3

For these reasons, Twitter opposes Plaintiffs' subpoenas.

*Plaintiffs' Position In Support of Their Subpoenas*

In May 2016, Plaintiffs served Twitter with a document subpoena that requested relevant information addressed to the claims and defenses in this action (copy attached). Following the meet-and-confer we had in early June, we withdrew 13 of the categories requested in the subpoena, and we narrowed other categories. Nonetheless, Twitter then served 60 pages of objections refusing to produce *any documents.* That is still their position today.

In September 2016 – still well within the discovery period – we followed up with Twitter's counsel and were met with the same objections, and a new argument that we were now too late to demand documents. Over the past several weeks, we and Twitter's counsel have engaged in a volley of emails and letters. Yet Twitter has not budged one bit from its complete refusal to produce *any* documents. During the past few weeks, we showed further good faith by withdrawing an additional 7 requests. Because of these fruitless attempts, we engaged in the required face-to-face meet-and-confer.

Twitter's assertion that we refused to participate in a meet-and-confer is both factually untrue and disingenuous. We first had a lengthy telephonic meet-and-confer before Twitter served its formal objections, and more recently have had several exchanges in which the parties argued their respective positions, culminating in a face-to-face meet-and-confer. In fact, in a September 15, 2016 email, we asked Twitter's counsel to "please let me know if you are available for an in-person / face-to-face meet and confer at your offices with Robert Matz, our local counsel on this case (with me participating by phone)." In response, Twitter's counsel wrote that we were demanding a meet-and-confer on a "short fuse" and refused to provide alternate dates.

Also in mid-September 2016, we attempted to serve a deposition subpoena on Nils Erdmann, a former Twitter employee with relevant information. We also provided a copy of the subpoena to Twitter's counsel before we attempted service. Our attempts at service were unsuccessful because Mr. Erdmann was no longer working for Twitter, and then had left another company at whose offices we tried to serve him. When we asked Twitter's counsel (who indicated they would be representing Mr. Erdmann) if they would accept service, they refused that as well. Twitter's counsel also responded that they will not be providing deposition dates for Mr. Erdmann "given the timing issues." Effectively, Twitter's position is that follow up and discovery efforts several weeks before the end of the discovery period do not obligate them to comply, creating a lame duck period of discovery. Notably, in a September 15, 2016 email from Twitter's counsel following our transmittal of the deposition subpoena to Mr. Erdmann, Twitter conceded Mr. Erdmann's relevance, writing that "[y]ou also have not provided any substantive reason that Mr. Erdmann should appear for a deposition – other than that you've discovered he attended a meeting, which defendants apparently have already described and testified to." Twitter's slant on the Federal Rules is that if a party will testify to certain events, a non-party also in attendance at those events need not be compelled to provide his or her own account of those events. This is certainly not the law. (And, Mr. Erdmann was involved in more than just one meeting, and we are entitled to depose him about those events as they bear on the claims and defenses in this action.)

Specifically in response to the document subpoena, Twitter advances three main arguments: (i) the categories are vastly overbroad; (ii) the documents are not relevant; and (iii) Twitter as a non-party does

Hon. Yvonne Gonzalez Rogers
October 14, 2016
Page 4

not have to produce documents that defendants should produce.  None of these objections satisfies Twitter's discovery obligations.

As to overbreadth, the categories in the subpoena are focused and narrow.  For example, Request 39 asked for documents related to the October 2, 2012 conference call led by Nils Erdmann.  Request 2 asked for a list of shareholders whose shares were included in the Twitter Offering.  Request 14 asked for documents in which Twitter authorized Plaintiffs to assist with the Twitter Offering, and Request 43 asked for documents showing that Twitter was concerned about the way Plaintiffs handled the Twitter Offering.  Requests 22, 23, and 35 asked for documents in which Twitter approved GSV to form @GSV Fund and to market the Twitter Offering.  Requests 40, 41, 42, and 44 asked for documents related to the cancelation of the Twitter Offering. These and the other categories that remain after Plaintiffs withdrew multiple requests on two occasions are in no way overly broad.

As to relevance, Plaintiffs have described the relevance of each category of documents on a number of occasions – most recently in an October 5, 2016 letter (copy attached).  This is more than a sufficient proffer under the Federal Rules.  Yet Twitter's counsel remains unconvinced of their relevance and instead has set a much higher standard than what the rules provide, stating that documents are only relevant if they establish liability.  To the contrary, the well-worn standard of discoverability under Rules 26 and 45 is whether a document has *any* tendency to lead to the discovery of admissible evidence.  The categories in the subpoena certainly meet and exceed that standard.

Finally, Twitter objects that it has no obligation to produce documents until Plaintiffs demonstrate to Twitter that they tried to obtain such documents from defendants, were unable to do so, and what the reasons were for such inability.  This is as incorrect as it is absurd.  Though a non-party, Twitter can be compelled to produce documents under Rule 45 despite the success or failure of obtaining similar documents from Defendants.  Twitter has ignored authorities we offered like *Realtime Data LLC v. MetroPCS Tex., LLC*, 2012 U.S. Dist. LEXIS 73257 (S.D. Cal. May 25, 2012), in which the court explained that the plaintiff was entitled to documents from a third party even if identical documents have already been produced by the defendant.

The authorities Twitter has pointed to for protection do not apply here because those involved circumstances in which parties focused their discovery efforts on non-parties instead of proceeding against parties.  The overriding principle is avoiding *undue* burden on non-parties (not *any* burden whatsoever).  Here, we have actively pursued documents from Defendants and separately have pursued relevant materials from Twitter.  We narrowed the subpoena by withdrawing 20 of the requests.  But, under the circumstances of this case, toward the end of the discovery period, Plaintiffs are well within their rights to pursue the categories that remain and the deposition of Mr. Erdmann.

There is nothing untimely about Plaintiffs' two subpoenas, both presented well within the discovery period.  At no time has Twitter compromised.  And at no time has Twitter agreed to produce even some documents.  What *is* untimely is Twitter's motion to quash, which comes more than four months after being served and long after serving 60 pages of objections.  Rule 45 requires a motion to quash to be made within the time for compliance of the subpoena, which has long passed (and which Twitter has arguably waived by choosing to respond instead with a detailed, lengthy series of responses and objections).  For these reasons, Twitter should be compelled to respond to Plaintiffs' subpoena.

Hon. Yvonne Gonzalez Rogers
October 14, 2016
Page 5


Sincerely,

| | |
|---|---|
| */s/ Sonali D. Maitra* | */s/ Brian H. Brick* |
| Sonali D. Maitra for Non-Party Twitter, Inc. | Brian H. Brick for Plaintiffs Continental Advisors S.A. and Precedo Capital Group LLC |

Attachments

## FILER'S ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, Sonali D. Maitra, attest that concurrence in the filing of this document has been obtained.

Dated:  October 14, 2016                             */s/ Sonali D. Maitra*
                                                                    SONALI D. MAITRA

## CERTIFICATE OF SERVICE

I certify that all counsel of record is being served on October 14, 2016 with a copy of this document via the Court's CM/ECF system.

                                                                    */s/ Sonali D. Maitra*
                                                                    SONALI D. MAITRA